Case number 20-3084, United States of America v. Frederick A. Miller, also known as Toby, appellant. Mr. Hart, pretty appellant. Ms. Part, pretty appellant. Mr. Part, before we begin, just what I was reading, we have Mr. Tyler Miller. I'm delighted we are to be back to share that report with all of you today. I'm sure you'll be delighted to come.         Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. My name is Dennis Hart. I'm here to assume the realize that Frederick Miller, again. Is more than willing to report his book to Mr. Horn. Your wish is very important and we would like to begin our presentation with our question about management, which may be the first question the court has to face, and perhaps the last  This will be a short presentation and brief statement. The next question is the application of language and grammar in the mandate rule to the facts of this case. The fortunate presence of computer researchers. I was able to attend one of the times we were in a vacated period in the 2018 opinion It appeared 17 times in the opinion. What was the word? Vacated. Okay. Or in reverse, it appeared only three times. But when you're able to search that way, you can go to each vacate in the opinion and see what it refers to. At no time in the 2018 opinion did the panel in this court vacate its conviction The failure of the government in this court to satisfy the enhancement of the word. We can do enhancements in the opinion. Vacate in reverse are sometimes two different actions. We should generally agree that that may be a test for whether it meets the requirements. When they vacate, the court can consider everything. First, we have to step back. None of the problems this court saw in the sentence. We have a second test that we'll get to later. Because we just have a number of vacancy cases alternate. Secondly, we believe the government asserts that the sentencing meter is in order to get back to zero after the 2018 opinion. We don't believe it yet. We believe it will go back two steps. Two steps on the line. On the red line. I think it's going to be significantly shorter. But it applies to the government as well. We believe the district court should only go back to two steps for the enhancement. Not back to zero. Not start at zero, but to draw forward. If the court agrees with the government, the district court error is sent to 2020. Mr. Hart, the argument is that the enhancements are invalid. Then the sentencing on the RICO count, which previously the enhancements were like, the enhancements are unsupportable. That makes movement relevant. So, why is the vacature of the RICO count and the decision that the enhancements are completely unsupportable? And now under this particular remand and all its limitations, nonetheless consistent with what the district court did. Well, I would disagree with the word newly and relevant. Let me explain why I disagree with the word newly. This is not new information. This is information from the 2006 and 2007 trials. For every one of them. It's not relevant because the mandate from this court was simply to fulfill your obligations for the weapons enhancement and for medicine. It was a cross between the eyes directed by this court. Everyone thought the district court could do that. The reason was no serious doctor could do it. Well, I can't speak for the government. We thought it was just not a good reason to do that in the order of 2018. But rather the road map, the court could do it right the next time. That certainly was the view of the government last year. Almost a year before Mr. Miller was sentenced, the government maintained that it had enough evidence to support the weapons enhancement and then a jury report. I believe there were four decisions on the case. There were several sentencing memorandums. The first two were quite lengthy. All argued that there was sufficient evidence to support weapons enhancement. They gave the opportunity for the court to stop that. The court did not deny that. They tried to coalesce the two matters with each other. They agreed that they could not meet their own group. Thus, it's not newly, it's not relevant because this court knew where the people were. The district court could cross the T's. It could not cross the T's. And that would be a move approved by the government rather than a draft by this court. I'd like to present one of the patients the government cited in this 28-day letter. His name is Henry. And that  Henry. The judge in this 28-day letter submitted to the government earlier this week a drug trial in which a fear of thinner enhancement was vacated by the court. I believe it was a court of search. They concluded that when he was re-sentenced and given a life sentence, under a variance, that they could do that. It did not violate the force of the commandment because the government had not given the opportunity for the enforcer to argue for this variance in the first sentence of the written shot. That's a very good illustration of what happened here. Remember that the appellant was sentenced in 2007 to life in prison. The government had no chance to argue that. But he was re-sentenced after reading by this court in 2016 to rego life in prison. Rego does not count as mandatory life in prison. CCA counted it. And as a result, that was the first opportunity for the government to argue there's a possibility for variance for whatever reason. Since 2016, the government has always maintained that this is a guidelines case, that there is no variance until the last minute before sentencing, and that they argue that there are suspicious facts under the guidelines to meet the burden for life in prison under the guidelines. So Mr. Hart, is your position that the government, even if it might be competitive, it's critical ground here, the enhancement, that the government has to, in order to preserve them, make all potential arguments for enhancement and or variance at the first opportunity? In other words, in this case, in 2016, where it was looking for a basis to go to the higher sentence, that unless the government rolls out every argument at that point, those arguments aren't practical. No, I think they have to bring out their best case. Their theory was their best case. The guidelines sentence in 2016, they maintained that throughout 2019, when the district court judged, and then finally agreed that they couldn't make the case. They made that bet. They have to move. So they make their best case, their best case, I mean, I think that is what I was asking, but the answer is no. If their best case fails, if they want a fallback, they need to have articulated that in 2016. They do. Otherwise, they wait. Because if they had that opportunity, they'd choose to close, not to pursue. And I think the answer is that there isn't any question directly on that, either from this court or any other court. Your closest case that best supports that position is? What? Well, I'm saying the short case that I just mentioned  We're going to call it a short case. The court said no. The government didn't have a chance to argue that because it was a mandatory. If they hadn't, it implies that if they had that chance, then they would apply it as a mandate if the court gave it a second time around. Before you sit down, let me just ask you, you talk about life without parole, but my understanding is there's no parole system anymore. Can you clarify what you're referring to? And in turn, that has significant effects on the future of the country. Thank you. Let's go to this court. Under Wren, on remand and re-sentencing, this court may consider only such new arguments as are made immediately relevant to the court's appeal decision, with my reasoning as a result. Here, Miller should mandate the first remand and re-sentencing prior on remand and re-sentencing, the leader of organized re-sentencing, and the leader of the spirit of consent. Based on Miller's opinion, the prosecutor did not seek remand and re-sentencing because the court did not apply it. The result of this court's decision to Miller, too, was a lower guidelines range because the upper end was no longer life imprisonment, which made the government's request for a remand and re-sentencing completely wrong. The government had no reason to ask for a remand and re-sentencing, either in the original 2007 sentencing, for the statutory mandatory minimum of 16 weeks of life, nor did it have a reason or incentive to ask for a vote for rebellion at the initial 2016 re-sentencing that the district court had determined was an actual guidelines range for the spirit of consent. It was rethinking that system of life imprisonment. The district court, again, worked into the government's argument that that was a very important decision. We don't have a case supporting that position, doing what's been assumed a lot of the time, contrary to your opponent's argument that you don't have an obligation to make your alternative. That's the case. And the first time that you need to, yeah. We're ready to talk about reasoning and other questions. Could you speak a little louder? I'm sorry. Is there a microphone here? There is a microphone. I apologize. I will try to speak. It makes all the difference in the world. I'm sorry? It makes all the difference in the world. You can hear me? Good. Thank goodness I don't have a map to make it work. But, um, Bren talks about reason for consent. And what I want to be saying is we have to make all our arguments, all our alternative arguments, at the beginning, um, initial sentencing, or else we're going to lose them all. That's simply not what Bren said. And here, you know, after the 2016 sentencing, after the district court calculated the guidelines range, he turned to the party and he said, any arguments that council would like to make about whether the court should depart from the guidelines under the 35-degree factor is called here. And that's a page 12 of the 2016 transcript. Um, clearly at that point, the government had no incentive to ask for this deterrent under the 35-degree factor. And the upper end of the guideline range was white. It made it awkward to ask the court at that point, well, in case this gets reversed on appeal, these enhancements can reverse on appeal, we would ask you to make alternative findings for the upper barrier. But Ms. Park, that, the part of the transcript that you say actually seems to cut the other way because the district judge himself was contemplating that notwithstanding that the upper bound of the guideline sentence with the enhancements was like, you might not want to make variance arguments. And did it, the government didn't make variance arguments at that point. I think when he, practically speaking, I think that was really addressed to the council at that point. And when he said the court, I think he means variance because he was addressing the 35-degree factor. But I think that was correct. Yeah. So I would suggest to the court that to ask the government to make the argument, alternative argument, awkwardly depart from life, awkwardly vary from life, there's really no such thing. And that's basically the end of the problem. I see the logic of your position. But we're all lawyers, and we all know that the primary grounds of which we start, the defendants that we want might in fact be vulnerable. And where it is in the judgment of the government that the enhancements, for example, might be unsupported, why wouldn't it make sense to say that the government needs to make its best judgment, and do bail and suspenders, as lawyers often do, and go forward with that assurance, or what are the available grounds to make that judgment? The difficulty is, at what point do you say it was shakily enough that you should have made an objection? It seems like you're asking the court to go back and look to see whether the opportunity had risen to a certain point where the government should have done it. It seems to be saying, he objected to the enhancements. So because he objected, the government at that point should have known this might be reversed on appeal, and made their request for cover very instant. I think the right standard is really workable. There's no reason or no incentive. The difficulty is this internet regret, the second bite of the apple, the third bite of the apple. The district court tries one thing, and the government has no incentive to make sure that it's confident in the various grounds that it proposes for varying standard of enhancements, because it knows always if there's a shortfall, it brings something else up. And here I understand it was the court that brought up the ultimate basis for the awkward remedies, more so than the government. But the difficulty from the defendant's perspective is it's an infinite moving target, infinite bites at the apple to get the sentence right. And that may be, that's a plausible system. The question is, is it a system that would have, certainly have some of this stuff. I mean, I think what your honor is talking about when you have a re-sentencing, anything you can add, any arguments, or make any arguments for any evidence you could have at the original sentencing. And some jurisdictions have a document. The purpose when the district court documents was, the reason was the limit. That you always get first bite, second bite, third bite. You only can deal with issues that arise in the fraction of the sentence resulting from court decision. That's essentially a hard to grasp. And they rely on the sentence circuit case when they talk about adopting this wave of approach, this no-go approach. And that seems to me to strike a fair middle ground. Because it doesn't seem fair to allow litigants to have to make every small turn of the argument at the original sentencing. Even if other parties may object to it. But it does say, if you had a strong reason to make it right then and there, you should have. In this situation, where the upper end of the guidelines was light, the government simply had no reason or incentive to ask for a variance going upward on alternative basis. Let me ask you about the district judge's reliance on the Oguchi murder attempt. It's troubling that that occurred, at least it appears to have occurred, we don't want findings to be unturned. That it appears to have occurred before Mr. Miller during the conspiracy. How is it permissible for the district court to take into account conduct that is both quite notable, hard to see as just marginal or harmless, that was engaged with you before Miller was involved and you're not even sure what the law is for? Yes, Your Honor. And I would say from the district court's view, there is not a case where the district court may incorporate that conduct into the guidelines calculation, where he would have to find Here, he was doing a more broad assessment of the murder and under the 35-degree factors. And this court has said, the court does not require state findings in the guidelines to impose a variance. And it could properly apply broader 35-degree A considerations in the second to edit, determining whether or not the variance is important. So that's what the district court was doing here. And when you look at the language, and I believe it's pretty much verbatim in the transcript, when he talks about Uluji, he says, people like Mr. Uluji for grievances incurred as a result of the conspiracy against his brother. So you found an example of how there were other similar acts that the Uluji attempted murder could have been a shorthand for during the time. I don't know if it's a shorthand for it. I know there were other murders. Other murders, they did not, district court did not rely on them. So I'm sorry. I thought the argument you were making was that you referred to the Uluji attempted murder as a signifier of the kind of time that this conspiracy existed on the public or participants or what have you. But then I assume you're saying, well, that's not your point. No, that is my point. I mean, if you take a broader view of it, it didn't really matter how it was involved in the Uluji murder. It was the fact that this nature of conspiracy, he joined, we don't know at what point, he joined and he left. And the Uluji murder just kind of underscored the type of actions that this conspiracy was capable of. So are you saying there isn't another attempted murder or murder or violent assault incident that you would point to after what we know is involved that would, of which the Uluji attempted murder would be just one thing? That's not your point. Your Honor, there are other murders, at least one other murder that I know was charged and there was evidence of crime. I do not know off the top of my head the time frame of when this murder took place. That was 2001 Pruitt? Yeah, Pruitt. I think that means, yeah. That was 2001 and that was in Ireland when he was being an accessory after the fact and he was put in a home. But the point here is that the court was looking at the Uluji murder, the other conduct that was found to be non-assaulting. The incident with Gladstone, that was found intimately, you know, where he investigated part of that state of the federal law and I don't think it's relevant. I think the point the court was trying to make was, you know, he's looking at the nature of the offense and the overall harm caused by the conspiracy. And, you know, in light of the attempted murder of Uluji, how it was offered to kill Valentino Palmer on behalf of Bradford was not an isolated case in the psychological conspiracy. Do you have record evidence that Mr. Miller was even aware of the Uluji murder attempt? I believe there is. I don't believe there is. So it wouldn't bear at all on what was Mr. Miller's intention, whether he was just trying to butter up Mr. Bradford and talk tough or whether he was the kind of person that might have actually followed through, which I thought was what you were suggesting. Yeah. I'm looking at the murder in a broader sense. Not so much that he knew that it happened, but just that this is an example. I think he was very involved in the Uluji murder for sure. And Island was actually outside of the parking lot when Palmer went in to see Bradford. Actually, Bradford wanted to talk to Island. So he's very much involved in what's going on with Bradford too. I think the point is, this is a time of conspiracy. Island and Palmer were running. And we know what they did. And what they did was murder people who stood in the way of their goals. And there was nothing that the threat that he made offered to kill Dr. Palmer was very real. And certainly, it was reasonable to infer that Jay Bradford's thought was real because he immediately started backtracking. And I'm not really questioning that in action. It's really difficult to rely on some Uluji murder attempt if we were to think that it was permissible for the district court to rely on that Uluji murder attempt because it, A, created no one's involvement, and B, there's no evidence that he's aware of it. What then? Yeah. I think the court was looking at all these facts. And the use of the private investigator credential, that was certainly atypical. And that was an incident that was repeated by the prosecutor at the 2007 assessment. It was a consistent theme. There are other factors. Yes. But what's legally available to us? We don't know whether the district court was even aware because the district court, on its own, came up with these versions. We briefed it. The district court responded to it. And we don't even know if the district court was aware that this murder had happened perhaps many months or a year or more before Mr. Palmer was involved. Maybe it was central to his consideration. And he would never have meant to rely on that if he knew there was no access to Mr. Palmer. What do we do to meet, say, a harmless error and just affirm? Well, the mandate. We are not talking about procedural reasons. I think we've moved on to the reasonableness of the sentence, not the mandate. I was going to say the mandate issue is plain error. We're opposing other variants based on that mandate by the mandate. If the court thinks a piece of the puzzle or the fact that the mandate is problematic, I suppose the court could begin with instructions to not consider that and kind of redo the document and whether that changes. But I don't really have a sense of the court. This court has stated when you're talking about the district court's consideration of 35-degree sentence, the kind of evidence the court can look at is very important. And here, this district court judge, after two very long trials involving the court, he saw and recognized that it was plain error. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Council have no time remaining. Thank you. A member of their family members. And if not, we say where I was say hand hands on hands hands up it is Mirka every violent act that's auden or generalization uh and the question was that we see the question was the district court had seen the evidence and it knew best what to do when you say there was he's been in every violent act what are you referring to oh there was some assaults they were involved in a i believe a legal predicate act um there may have been something with the spirits of justice i wasn't proud of him but none of them came up as part of the appeal because he was a clear but as you know i'm sentencing yes including conducts can be considered i'm sorry i didn't need to know yes i did but that's why he was not involved in the sentencing originally because it was never brought up by the government in say 2016 when we believe it should the final is that i don't think this court will find an increase any case in this circuit there has been a variance of the life without the law the reason for that is because district courts in this circuit have never dealt with it there's a reason for that because it's the most extreme measure of district court to do and it requires the most extreme things that are that penalty and no more than this you were appointed by the court to represent this
judges: Henderson, Pillard, Silberman